**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| MICHAEL BREAZELL,<br><br>*Plaintiff*,<br><br>*v*.<br><br>PERMIAN TRUCKING & HOT SHOT, LLC d/b/a WILBANKS ENERGY LOGISTICS,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No: 7:15-CV-199-XR |

**ORDER**

On this date, the Court considered Plaintiff's Motion for Default Judgment. (Docket no. 19). After careful consideration, the Court GRANTS the motion on Plaintiff's Title VII discrimination and retaliation claims, DENIES the motion on the ADA and IIED claims, and DEFERS a decision on the amount of damages pending an evidentiary hearing.

**BACKGROUND**

## I. Factual History[1]

In April 2014, Defendant Permian Trucking & Hot Shot, LLC hired Plaintiff Michael Breazell. About a month later, Plaintiff was involved in a car accident that resulted in the fatality of the other driver. Plaintiff alleges that after the accident, Defendant assured him that it would "take care" of his medical needs privately and that he need not file a worker's compensation claim. Defendant allegedly took Plaintiff's prescription to have it filled for him and delivered the medical to him a week later. This delay in delivering the prescription "caused additional unnecessary physical and emotional pain and suffering by Plaintiff." Plaintiff alleges that after

[1] The factual allegations set forth in this order are taken from Plaintiff's complaint. Docket no. 1.

several unsuccessful requests for Defendant to provide further medical attention, he was "forced to used his military benefits through the Veterans Affairs Hospital in El Paso, Texas."

Somewhat independently from the car accident and unfulfilled medical treatment, Plaintiff makes allegations related to how he was treated during his employment with Defendant. Plaintiff states that he timely filed a charge of discrimination with the EEOC, obtained a right-to-sue letter, and timely filed this complaint after receiving the letter. The charge of discrimination relates to an HR complaint that Plaintiff initiated after a fellow employee made a comment including the word "nigger." The other employee was eventually terminated, and Plaintiff alleges that other managers and co-workers retaliated, harassed, and discriminated against him. He alleges that his work assignments were limited, tasks suitable for him were assigned to employees of other races, he was forced to arrive at work early despite the unavailability of a vehicle that would allow him to perform his duties, and his requests to repair his company vehicle were ignored. He further alleges that Defendant told him that Defendant wanted to make "[his] and his family['s] life feel 'like hell.'"

Plaintiff claims to have suffered damages as a result of both "Defendant's failure to timely provide . . . adequate medical care" and also as a result of "Defendant's unlawful employment practices of race and color discrimination and disability discrimination." Docket no. 19 at 1. He asserts causes of action for discrimination and retaliation under Title VII, violations of the ADA, and intentional infliction of emotional distress under Texas law.

## II. Procedural History

On November 20, 2015, Plaintiff filed his Original Complaint. Docket no. 1. Summons was issued and Plaintiff filed a return of service indicating that Defendant was served on March 8, 2016. Docket no. 10. Defendant failed to answer or otherwise respond. On May 19, 2016,

Judge Robert A. Junell ordered that the clerk enter default, and the clerk did so four days later. Docket nos. 14, 15. The case was then transferred to the docket of the undersigned judge. Docket no. 16.

On August 1, 2016, this Court ordered Plaintiff to file a Motion for Default Judgment, or seek leave for an extension of time to do so, by August 22. Docket no. 17. Plaintiff was expressly warned that failure to comply with this order would result in dismissal of this lawsuit. *Id*. By August 31, the deadline had expired and Plaintiff had not moved for entry of Default Judgment, so the Court ordered Plaintiff to show cause by September 21 as to why his lawsuit should not be dismissed for lack of prosecution. Docket no. 18. On September 22, Plaintiff filed both his response to the Order to Show Cause and his Motion for Default Judgment. Docket nos. 19, 20. Now before the Court is the Plaintiff's Motion for Default Judgment. Docket no. 19.

**STANDARD OF REVIEW**

"After defendant's default has been entered, plaintiff may apply for a judgment based on such default." *New York Life Ins. v. Brown*, 84 F.3d 137, 140 (5th Cir. 1996). Rule 55(a) provides that a default judgment is proper when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. FED. R. CIV. P. 55(a). "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "[I]n considering any motion for default judgment, a court must examine jurisdiction, liability, and damages." *Labaty v. UWT, Inc.*, No. SA-13-CV-389-XR, 2016 WL 1737145, at *1 (W.D. Tex May 2, 2016).

## ANALYSIS

### I. Jurisdiction

The Court has federal question jurisdiction over the ADA and Title VII claims. 28 U.S.C. § 1331; 42 U.S.C. §§ 12101 *et. seq*.; 42 U.S.C. §§ 2000(e) *et. seq*. The Court has supplemental jurisdiction over Plaintiff's state law IIED claim pursuant to 28 U.S.C. § 1367(a). The Court has personal jurisdiction over Defendant because Defendant is an LLC doing business within this district. *See Rabin v. McClain*, 881 F. Supp. 2d 758, 764–66 (W.D. Tex. 2012) (exercising personal jurisdiction over non-resident defendants with sufficient contacts in the forum state).

Defendant may be served by serving CT Corporation System—Defendant's agent authorized to accept service in the state of Texas. *See* FED. R. CIV. P. 4(h). Pursuant to Federal Rules, the plaintiff must serve the summons and complaint on the defendant within 120 days after the filing of the complaint. *See* FED. R. CIV. P. 4(m).[2] Here, Plaintiff filed suit on November 20, 2015. Docket no. 1. On March 8, 2016, Plaintiff served a copy of the summons and complaint on CT Corporation System—the process specialist designated to accept service on Defendant's behalf. Docket no. 11; FED. R. CIV. P. 4(h). Therefore, Defendant was properly served, and the Court has subject matter jurisdiction over the case and personal jurisdiction over the parties.

### II. Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the

[2] FED. R. CIV. P. 4(m) was recently amended—effective December 1, 2015, the 120-day time period was reduced to 90 days after the filing of the complaint. In this case, however, the relevant time period is 120 days because of when Plaintiff filed his complaint.

Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment unless the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); Wright & Miller, FED. PRAC. & PRO. § 2688 ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]'" *J & J Sports Productions, Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F. Supp.3d 809, 815 (N.D. Tex. 2015). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. (1957)); s*ee also* FED. R. CIV. P. 8(a)(2).

**a. Title VII Discrimination and Retaliation Claims**

"Title VII of the Civil Rights Act of 1964, as amended, 42 § U.S.C. 2000(e) *et. seq.*, prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment." *Fitzgerald v. Secretary, U.S. Dept. of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). Title VII makes it "unlawful for an employer to 'discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment.'" *Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir. 1990). To bring a Title VII claim, a plaintiff alleging unlawful employment practices must file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred, but "[i]n a 'deferral state' such as Texas, the charge must be filed within 300 days." 42 U.S.C. § 2000e–5(e)(1); *Simotas v. Kelsey-Seybold*, 211 F. App'x 273, 275 (5th Cir. 2006). After making the charge, a plaintiff must receive a right to sue letter from the EEOC, and file suit within 90 days of receiving this letter. 42 U.S.C. § 2000e–5(f)(1). Although not a jurisdictional prerequisite, receipt of this letter "is a condition precedent to a Title VII claim." *Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1215 (5th Cir. 1982). Plaintiff's Complaint states that he filed a charge with the EEOC within 300 days of the alleged unlawful practice, received a right to sue letter, and filed this suit within the 90 days of receiving the letter, thereby satisfying all conditions precedent to suit.[3] Docket no. 1 at 2.

"The complainant in a Title VII trial must carry the initial burden . . . of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). To do so, a plaintiff must show "(1) he was a member of a protected class; (2) he was qualified for his position; (3) an adverse employment action was suffered; and (4) other similarly situated employees were treated more favorably." *Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 614–15 (W.D. Tex. 2005) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358 (5th Cir. 2004). To state a claim for retaliation under Title VII, a plaintiff must

[3] Plaintiff's complaint does not provide the specific dates on which he filed his EEOC charge or obtained his right to sue letter, nor does it attach the letter itself. *See* Docket no. 1 at 2. Nevertheless, the complaint adequately alleges compliance with the condition precedent of receiving a right to sue letter. FED. R. CIV. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity"); *Hildebrand v. Allegheny Cty*., 757 F.3d 99, 112 (3d Cir. 2014) (holding that pleading standards for receipt of a right to sue letter are governed by Rule 9(c)'s standard for conditions precedent and are not altered by *Iqbal* and *Twombly,* which interpreted Rule 8(a)).

show "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015).

Plaintiff claims he is both a "person" and a member of a "protected class" within the meaning of Title VII and that Defendant is an "employer" within the meaning of the ADA and Title VII. Docket no. 1 at 2–3. Plaintiff alleges that during his employment, Plaintiff initiated a complaint with HR about a racial slur made by a fellow employee who was ultimately terminated but who was friends with other employees and managers. Consequently, Plaintiff alleges that he was harassed and discriminated against by co-workers and managers in retaliation for reporting the discriminatory remark. Moreover, Plaintiff alleges that Defendant limited his work assignments, assigned his work duties to co-workers of other races, and took other actions against him that were intended "to make [his] and his family['s] life feel 'like hell.'" Plaintiff states that Defendant discriminated against him "in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified [him] in a manner that would deprive . . . him or any employment opportunity or adversely affect his status because of [his] race and color in violation of [Title VII]." Docket no. 1 at 5.

These allegations, taken as true due to Defendant's default, provide a sufficient basis for providing relief on his Title VII discrimination and retaliation claims. Accordingly, the Court grants default judgment on these claims.

**b. ADA Claim**

The ADA prohibits discrimination in employment against qualified persons with a disability. "To establish a *prima facia* discrimination claim under the ADA, [Plaintiff] must show that [he] was disabled, was qualified for the job, and was the subject of an adverse

employment action because of [his] disability." *Dupre v. Charter Behavioral Health Systems of Lafayette Inc.*, 242 F.3d 610, 613 (5th Cir. 2001) (citing *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 851 (5th Cir. 1999)). "'Disability' as used in the ADA means: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Id.* (citing 42 U.S.C. § 12102(2)).

"Substantially limits" and "major life activity" are not defined by the ADA, but the "EEOC has promulgated regulations under the ADA that define those terms." *Dupre*, 242 F.3d at 614. "Substantial impairment" depends on a few things: "(1) the nature and severity of the impairment, (2) its duration or expected duration, (3) and its permanent or expected permanent or long-term impact." *Id*. Plaintiff's complaint merely states that Defendant caused him "unnecessary physical and emotional pain and suffering" without explaining how this pain and suffering substantially impaired a major life activity. Docket no. 1 at 3. Plaintiff neither provides evidence of a "record" of impairment under the ADA nor facts showing that he was "regarded as" disabled by his employer. *See Dupre*, 242 F.3d at 615 (citing *McInnis v. Alamo Community College District*, 207 F.3d 276, 281 (5th Cir. 2000)). Accordingly, Plaintiff has not alleged that he is disabled under the ADA, and the Court denies his motion for default judgment on this claim.

**c. IIED Claim**

To recover on a claim of intentional infliction of emotional distress in Texas, a plaintiff must prove that the defendant "(1) acted intentionally or recklessly (2) in an extreme and outrageous manner (3) that caused him to suffer emotional distress (4) that was severe." *Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007) (citing *Weller v. Citation Oil*

*& Gas Corp.*, 84 F.3d 191, 195 (5th Cir. 1996)). Plaintiff alleges that Defendant "intentionally or recklessly committed Intentional Infliction of Emotional Distress . . . by denying Plaintiff his medical prescription after a fatally serious vehicle accident" and that Defendant's "mission was to ruin Plaintiff and make sure [he and his] family's life 'feels like hell.'" Docket no. 1 at 6.

The determination of whether the conduct is "outrageous enough to permit recovery is a matter within the province of the court." *Von Beck-Lutes*, 484 F.Supp.2d at 588 (citing *Atkinson v. Denton Publishing Co.*, 84 F.3d 144, 151 (5th Cir. 1996)). Conduct is "outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as so atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

Plaintiff's claim of intentional infliction of emotional distress fails because Defendant's behavior is not "outrageous" under Texas law. Ordinary employment disputes, such as this one, generally cannot support an IIED claim, and it takes far more for conduct to be outrageous in this context. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1144–46 (5th Cir. 1991). In *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir. 1989), for example, the distinguishing action that turned a number of ordinary instances of unfair employment treatment into sufficiently outrageous conduct was a supervisor's intentional placement of forged checks into the plaintiff's purse to make it appear that the plaintiff was a thief. Plaintiff makes no allegations nearing the conduct in *Dean*, and at bottom, this is an ordinary employment dispute that cannot also support an IIED claim; were it otherwise, "all federal court discrimination lawsuits [would] be accompanied by pendent state law claims for emotional distress." *Monarch Paper Co.*, 939 F.2d at 1144. Accordingly, the Court denies Plaintiff's motion with respect to his IIED claim.

**III. Damages**

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Plaintiff's complaint lists several types of damages and does not specify any dollar amounts. Docket no. 1 at 7–8. Plaintiff's Motion for Default Judgment includes a shorter list of damages, and also includes dollar amounts next to each type. Docket no. 19 at 2. Because no monetary values accompanied the requested damages in the complaint, the amounts included in Plaintiff's motion for default judgment do not "exceed in amount [those] demanded in the pleadings." FED. R. CIV. P. 54(c). Moreover, the list of damages in Plaintiff's motion includes the same types contained in the complaint.

Usually, damages must be proven by a hearing, or a demonstration of detailed affidavits establishing the necessary facts, but "[i]f the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary." *J & J Sports Productions, Inc. v. Morelia Mexican Restaurant Inc.*, 126 F. Supp. 3d 809, 816 (N.D. Tex. 2015) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). "A hearing is not necessary . . . if the court finds within its discretion that it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment." *Johnson v. Sun Life & Health Ins. Co.*, No. SA-11-CV-203-XR, 2011 WL 1770678, at *1 (W.D. Tex. May 9, 2011).

Plaintiff has not presented any evidence or affidavits; the only dollar amounts that he provides are those listed in his motion. Therefore, an evidentiary hearing is necessary to

determine the damages to which Plaintiff is entitled on his Title VII claims. *See* FED. R. CIV. P. 55(b)(2)(B); *Labaty v. UWT, Inc.*, No. SA-13-CV-389-XR, 2016 WL 1737145, at *2 (W.D. Tex. May 2, 2016) ("As a general rule, in the context of default judgment, unliquidated damages normally are not awarded without an evidentiary hearing."). Plaintiff is to communicate with the Court regarding the proposed length and date for the hearing.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Default Judgment (Docket no. 19) is GRANTED in part as to his Title VII discrimination and retaliation claims and DENIED in part as to his ADA and IIED claims. An evidentiary hearing shall be held to determine the appropriate amount of damages. Plaintiff is to communicate with the Court's courtroom deputy, Becky Greenup (available at 210-472-6550, ext. 5011) regarding the proposed length of the hearing and proposed dates for the hearing. Until the hearing, a decision on the amount of damages is DEFERRED.

It is so ORDERED.

SIGNED this 4th day of January, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE